SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

PERERA COMPANY, Inc., Nicholas L.
Deak, Defendants.

No. 68 Civ. 1256.

United States District Court
S. D. New York.

Aug. 1, 1969.

Judith G. Shepard, New York City, for plaintiff.

Greenwald, Kovner & Goldsmith, New York City, for defendants; Harry Litwin, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

This is a motion by plaintiff, Securities and Exchange Commission (hereinafter referred to as "the S.E.C."), pursuant to Rule 30(b) of the Federal Rules of Civil Procedure, seeking a protective order to prevent the taking of the deposition of Charles E. Shreve, Director of its Division of Corporation Finance.

The cause of action underlying the within application is for a permanent injunction enjoining defendants from violating Sections 5(a) and 5(c) of the Securities Act of 1933 (hereinafter referred to as "the Act"), as amended, Title 15, United States Code, Sections 77e(a) and 77e(c),[1] in connection with the offer, sale and delivery after sale

1. Title 15, United States Code, Sections 77e(a) and 77e(c), read as follows:
   "(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
   (1) to make use of any means or instruments of transportation or communi-
   cation in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
   (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the

of Perera Company's short term promissory notes.[2]

Defendants contend that no violation occurred in that the 9-month promissory notes were exempted from the above-cited registration provisions in accordance with Section 3(a) (3) of the Act, which includes:

"(3) Any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited * * *."

In November 1968, plaintiff and defendants made simultaneous motions for summary judgment, both of which were denied on April 22, 1969 by the Honorable Marvin E. Frankel of this court who, accordingly directed plaintiff to file a note of issue not later than September 8, 1969.

A brief glance at the factual setting surrounding this litigation reveals that on September 20, 1961, as a result of some confusion concerning the scope of Section 3(a) (3), the S.E.C. issued Release No. 4412 for publication, an advisory opinion purporting to recite certain of the relevant legislative history pertinent to the section in question. As stated in the release (Affid. of Harry Litwin, dated June 4, 1969, Exh. A):

"Thus the Senate Report on the Securities Act of 1933 explained the purpose of Section 3(a) (3) as follows:

'Notes, drafts, bills of exchange, and banker's acceptances which are *commercial paper and arise out of current commercial, agricultural or industrial transactions, and which are not intended to be marketed to the public, are exempted * * * It is not intended under the bill to require the registration of short-term commercial paper which, as is the usual practice, is made to mature in a few months and ordinarily is not advertised for sale to the general public.'* (S.Rep.No.47 on S. 875, 73rd Cong., 1st Sess. (1933), pp. 3–4.)" (Emphasis supplied.)

It is the plaintiff's position herein that its release makes it clear that only notes which are not sold on the public market fall within the Section 3(a) (3) exemption, thereby excluding the Perera notes which are in fact offered for public sale. In response, however, defendant contends that not only do its notes fall within the express language of Section 3(a) (3) but also, and of prime importance, the only language in the release, relied on by the plaintiff, which speaks of the public sale factor relates to a totally different and irrelevant legislative bill which never passed in the Congress. More specifically, defendant asserts that the three asterisks inserted in the above-quoted portion of the release reflect the omission of the words "section 2(a)" indicating that the preceding underlined language related to a bill offered by the Senate and rejected by the Congress rather than the appropriate bill relating to Section 3(a) (3) which was introduced by the House and which was ultimately passed.

Inasmuch as it is defendants' conclusion that the S.E.C., by an intentional

---

purpose of sale or for delivery after sale.

\* \* \* \* \*

(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or other- wise any security * * * or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title. * * *"

2. The promissory notes which are the subject of these proceedings are payable within 9 months from the date of issue.

misuse of asterisks, knowingly distributed a deceitful publication, thereby attempting to entrap corporations into committing violations of Section 5 of the Act, it has noticed the taking of the deposition of Charles E. Shreve, who, in 1961, was ultimately responsible for the issuance of S.E.C. advisory releases.

The present motion seeks to prevent the taking of this deposition on the ground that it represents an unlawful attempt to explore the mental processes of a governmental official, which information falls within the protective confines of the "executive privilege".

In the interest of promoting the free and candid interchange of ideas as a means to achieving effective executive decisions, it is generally not in the public interest to compel the Government to disclose its prefatory thinking as evidenced by intra-agency advisory opinions. E. W. Bliss Co. v. United States, 203 F.Supp. 175, 176 (N.D.Ohio 1961) and the cases cited therein, unless it is perfectly clear to the court that the production of such documents is essential to the proper presentation of the movant's case. *Id.* The competing interests must be carefully weighed. 4 Moore, Federal Practice ¶ 26.25 [.6–4] (1968).

Although the S.E.C. appears suspect in the formulation of the release in issue, inasmuch as the release interprets Section 3(a) (3) as exempting from the registration requirements only commercial paper which is not intended to be marketed to the public, *it is obvious that defendants simply never relied on its provisions.* Defendants, it appears, relied solely on the language of the statute itself, which at no point mentions the public sale factor. Accordingly, it is the opinion of this Court that defendants have failed to show that kind of intimate relationship between the information sought by the deposition and the proper presentation of its defense to require a

setting aside of the executive privilege in this case.

After due consideration, the within motion is granted.

So ordered.